UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PRENTISS I. GUYTON                                          PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:08CV294TSL-JCS

MADISON COUNTY, MISSISSIPPI, AND
KARL M. BANKS                                            DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

    This cause is before the court on the motion of defendants Madison County, Mississippi and Karl M. Banks for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Prentiss I. Guyton has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

    Plaintiff Prentiss Guyton served as the road manager of Madison County for approximately three years, from his initial appointment by the Board of Supervisors in January 2004, <u>see</u> Miss. Code Ann. § 65-17-1 (2) (requiring each county board of supervisors to establish a "county road department" and to "appoint as administrative head . . . a county road manager who shall be experienced in the construction and maintenance of highways, bridges and other facets of county highway responsibilities"), until January 2007, when he was, as he

alleges, "forced and coerced to resign" by Supervisor Karl Banks, who wanted the Board to rehire Guyton's predecessor as road manager, Lawrence Morris, in order to keep Morris from running against Banks for Banks' seat on the Board of Supervisors. On April 14, 2008, Guyton filed the present action in the Circuit Court of Madison County, Mississippi, against Madison County and Banks, taking the position that he was constructively discharged, and asserting claims against Madison County for breach of contract, negligence or negligent breach of contract and violation and deprivation of property interest; against Banks for interference with contractual relations; and against both defendants for intentional and/or negligent infliction of emotional distress.

Defendants have moved for summary judgment on each of Guyton's claims on various grounds. They argue initially that the facts do not support Guyton's allegation that he was constructively discharged, but they submit that even if Guyton had been discharged, his claims against Madison County for breach of contract, negligent breach of contract and deprivation of property interest based on his alleged discharge must be dismissed since Guyton's employment relationship with Madison County was "at will" and he therefore had no contractual right to continued employment and no property interest in such employment. They further argue that his claims of negligence and negligent infliction of

2

emotional distress against Madison County are barred by the exclusivity provision of the Mississippi Workers' Compensation Act; that his claim against Banks for interference with contractual relations fails because the claim is based on Banks' actions that were within his responsibilities as a Madison County supervisor; and that his claim against defendants for intentional infliction of emotional distress fails both because the conduct at issue, i.e., his alleged constructive discharge, was legal and proper under the employment-at-will doctrine and because defendants' alleged actions do not rise to the level of severity required to support this claim. As explained below, the court finds and concludes that defendants' position on each of these points is meritorious and that plaintiff's complaint is therefore due to be dismissed.

Guyton's claims for breach of contract, negligent breach of contract and deprivation of property interest are grounded on plaintiff's allegation that he was constructively discharged. However, the undisputed facts, construed in the light most favorable to plaintiff, do not support a reasonable finding that he was constructively discharged. Guyton's theory is this: that prior to January 12, 2007, Banks, a member of the Board of Supervisors, knew that Lawrence Morris, who had preceded Guyton as the County's road manager, intended to run against him for Banks' seat on the Board. Plaintiff believes that in order to keep

3

Morris from running against him, Banks devised a plan to force plaintiff's resignation so the Board could rehire Morris and Banks could thereby induce Morris not to run against him. On January 12, 2007, Banks met alone with Guyton and demanded that he resign as road manager. According to Guyton, Banks told him that Banks "had the votes" to have Guyton terminated and that if he did not resign, Banks would ensure that Guyton was terminated by the Board. Following this meeting, Guyton consulted with two other supervisors, Andy Taggart and Paul Griffin. Taggart, he claims, seemed familiar with the situation and suggested that he should go ahead and resign to "prevent [Guyton's] name from being dragged through the mud in a meeting—in a long meeting." Griffin, on the other hand, told him "not [to] resign but fight it." Guyton also spoke with the Administrator for Madison County, Donnie Caughman, who although surprised at the request for Guyton's resignation, also recommended that he resign. Guyton claims that he felt his firing was inevitable and therefore tendered his letter of resignation, which was presented at the Board's January 16, 2007 meeting and which the Board voted to accept. Immediately thereafter, Banks moved that the Board reemploy Lawrence Morris, which it did by a vote of four to one, with Griffin dissenting.

A constructive discharge occurs when an employee quits his job under circumstances that are treated as an involuntary

termination of employment. See Young v. Southwestern Sav. & Loan Ass'n, 509 F.2d 140, 144 (5th Cir. 1975). Under Mississippi law,

> "[A] constructive discharge may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign." Shawgo v. Spradlin, 701 F.2d 470, 481 (5th Cir. 1983). Would a reasonable person in the employee's shoes have felt compelled to resign? Shawgo, 701 F.2d at 481 n.12 (citing Pittman v. Hattiesburg Municipal Separate School Dist., 644 F.2d 1071, 1077 (5th Cir. 1981)). We do not delve into the employer's state of mind or purpose; but rather the focus is on whether or not the employer made conditions intolerable. Shawgo, 701 F.2d at 481 n.12 (citing Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980)). Additionally, the Fifth Circuit seeks to determine whether or not the employee could reasonably conclude that he had no meaningful choice but to resign. Junior v. Texaco Inc., 688 F.2d 377, 380 (5th Cir. 1982).

Cothern v. Vickers, Inc., 759 So. 2d 1241, 1246 (Miss. 2000) (quoting Bulloch v. City of Pascagoula, 574 So. 2d 637, 640 (Miss. 1990)). Most courts recognize that a threat to fire someone can amount to constructive discharge, but the threat must place the employee under duress, leaving him no option but to resign. See Parker v. Bd. of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir. 1992). "[T]he assessment [of] whether real alternatives (to resignation) were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation ... is irrelevant." Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th Cir. 1995) (quoting Stone v. Univ. of Md. Medical Sys., Corp., 855 F.2d 167, 173 (4th Cir. 1988)). "'[T]he

5

mere fact that the choice is between comparably unpleasant alternatives ... does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary.'" Id. (quoting Stone, 855 F.2d at 174). This is so because the fact remains that a plaintiff faced with uninviting alternatives still has a choice. Kosciolek v. Wilkes-Barre Fire Fighters Ass'n Local 104, Civil Action No. 3:04-CV-1920, 2006 WL 3742700 (M.D. Pa. Dec. 18, 2006). See Hargray, 57 F.3d at 1567 (observing that "[r]esignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because 'the fact remains that plaintiff had a choice. [Plaintiff] could stand pat and fight.'") (quoting Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975)).

Guyton contends that from his discussions with Banks, and with Taggart and Griffin, it appeared to him that Banks had discussed the matter with the other supervisors, and from the content of his conversations, he claims he reasonably deduced that Banks did indeed have the votes necessary to fire him so that he had no real choice except to submit his resignation. He also maintains he could reasonably have concluded that if he did not resign, the Board would make the details of his firing public "in a long meeting," placing him under duress.

In the court's opinion, the facts related by Guyton do not create a genuine issue as to whether he could reasonably have

6

concluded he had no real choice but to resign.  Guyton knew a majority vote of the five-member Board of Supervisors was necessary to remove him, and while he claims he reasonably concluded from his conversations with Banks and Taggart that Banks likely did have the votes to remove him, it is apparent this was speculation on his part.  There is no indication that he spoke with the other supervisors or had any other basis for assessing their position.  Moreover, even if he believed that a majority of the Board was likely to vote against him, he was nevertheless clearly given the choice to resign or fight his resignation, and was even encouraged by Griffin to fight Banks' efforts to remove him.  That he chose to resign, rather than be subjected to the alternative of a "long meeting" which he felt (but did not know) would inevitably result in his removal, does not amount to having "no choice" but to resign.

All that having been said, even if plaintiff could prove he was constructively discharged, he still could not prevail on his claims, since he was an "at-will" employee. Mississippi follows the common-law rule of employment at-will, holding that "one who is under a contract of employment for an indefinite term may quit or may be terminated at the will of the employer, thus meaning that 'either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract.'"  DeCarlo v. Bonus Stores, Inc., 989 So. 2d 351, 354

(Miss. 2008) (quoting Kelly v. Miss. Valley Gas Co., 397 So. 2d 874, 875 (Miss. 1981)). Plaintiff was indisputably an "at-will" employee. Mississippi Code Annotated § 65-17-1(2) states this directly: "The county road manager shall serve at the will and pleasure of the board of supervisors and may be removed from such position by a majority vote of the board." Moreover, the Madison County, Mississippi Employee Handbook, under the heading "Disclaimer," confirms the at-will nature of his employment, stating,

> [N]either this handbook, nor any other documents or oral statements, constitute an express or implied contract for employment. **Employment is at will**. As such, employment is for no definite or specified time period . . . and both the employee and the employer have the unilateral right to terminate the employment relationship at any time, with or without cause or notice.

In addition, Guyton signed a "receipt and acknowledgment" form on February 28, 2005, containing similar wording.

Notwithstanding that he was an at-will employee, Guyton points out that the Mississippi Supreme Court has carved out certain exceptions to the employment-at-will doctrine, and contends he fits within both exceptions. First, the court adopted a public policy exception in McArn v. Allied Bruce-Terminix Co., Inc., 626 So. 2d 603 (Miss. 1993), holding that "(1) an employee who refuses to participate in an illegal act ... shall not be barred by the common law rule of employment at will from bringing

8

an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." Id. at 607 (citing Laws v. Aetna Finance Co., 667 F. Supp. 342 (N.D. Miss. 1993)).  Second, in Bobbitt v. Orchard, Ltd., 603 So. 2d 356, 361 (Miss. 1992), the court held that in certain circumstances, employees are required to follow the procedures for disciplining or discharging employees for misconduct specifically covered by an employment manual.

Guyton argues that his alleged "forced resignation" falls under the McArn public policy exception, reasoning that Banks' offer to Morris of the road manager position in return for Morris' not running for office against him was an illegal act.  However, McArn does not broadly offer protection against any termination that may offend public policy, but rather recognizes specific circumstances in which an employee is protected against retaliatory termination for his refusal to engage in illegal activity or his report of his employer's illegal act.  See DeCarlo, 989 So. 2d 351.  As defendants note, Guyton does not allege, nor has he presented any proof, that he was forced to resign because he refused to participate in an illegal act or because he reported an illegal act.  Rather, he alleges only that Banks committed what he contends were illegal acts.  Even if that

9

were true, the fact that Banks may have committed an illegal act is immaterial because there is no evidence that plaintiff was forced to resign because he refused to commit or reported any illegal acts.

Plaintiff also contends for application of the <u>Bobbitt</u> exception. In <u>Bobbitt</u>, the court held that where an employer publishes an employee manual setting forth the procedures for disciplinary action or termination in the event of an employee rule's violation, then the employer must abide by those published procedures even for at-will employees. However, in <u>Byrd v. Imperial Palace of Mississippi</u>, 807 So. 2d 433 (Miss. 2001), the court held that even where an employee handbook sets forth a grievance procedure to be followed for employee terminations, an employer may terminate an at-will employee without following such grievance procedures where the handbook contains a disclaimer expressly providing that the employment relationship between employee and employer is at-will and can be terminated by either party at any time and for any reason, and where the handbook also states that the employer does not intend by promulgating the handbook to waive its right to unilaterally terminate an at-will employee. <u>See</u> <u>also</u> <u>Piner v. Fidelity Nat. Corp.</u>, Civ. Action No. 3:02CV1784BN, 2003 WL 25537751, 3 (S.D. Miss. Mar. 31, 2003) ("When an employer promulgates a manual that contains a disclaimer expressly providing that the employment relationship is at-will

10

and can be terminated at any time, the employer has not waived this right to unilaterally terminate the employee by setting forth a grievance process in the manual.") (citing Byrd, 807 So. 2d 433). Plaintiff purports to acknowledge the court's holding in Byrd, and also acknowledges there was such a disclaimer in Madison County's employee handbook. Notwithstanding this, plaintiff submits that Madison County is required to honor the grievance provisions of its handbook (including its listing of grounds for termination), in light of Aiello v. United Air Lines, Inc., 818 F.2d 1196 (5th Cir. 1987), in which the Fifth Circuit found that a disclaimer akin to that included in the Madison County handbook was not controlling. However, Aiello was decided under Texas law, not Mississippi law, and the facts were distinguishable in any event.

For the foregoing reasons, the court concludes that plaintiff was an at-will employee whose alleged termination was not covered by any exception to the at-will employment doctrine which allowed his termination at the County's discretion at any time and for any reason. Further, in the absence of a right to continued employment, plaintiff had no property interest in continued employment. See Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 877 (5th Cir. 1991) (employee who could be discharged at will, had no protectible property interest and no right to a due process

hearing); Gaskin v. Village of Pachuta, 484 F. Supp. 2d 551, 555 (S.D. Miss. 2007). From all of this, it follows that plaintiff cannot prevail on his breach of contract claims, or his claim for deprivation of property interests.

In their motion, defendants argue that plaintiff's negligence claims are barred by the exclusivity provision of the Mississippi Workers' Compensation Act, Miss. Code Ann. § 71-3-9. See McNeill v. City of Canton, Miss., Civil Action No. 3:06cv74 DPJ-JCS, 2008 WL 249437, 15 (S.D. Jan. 29, Miss.) ("Under Mississippi law, proof of an intentional tort is required to circumvent [the] exclusive remedies available under workers' compensation law; allegations sounding in negligence are inadequate to avoid the exclusivity provision.") (citation omitted). In his response, plaintiff simply proclaims, without elaboration, that his negligence claims are not barred because the Workers' Compensation Act's definition of "injury" covers only accidental injury and does not apply to injury that "results from another's willful or intentional acts." Miss. Code Ann. § 71-3-3. The relevance of this provision is not apparent to the court, which concludes because the Workers' Compensation Act is the exclusive remedy for negligence in the workplace, plaintiff's negligence claims must be dismissed.

Banks has moved for summary judgment on plaintiff's claim against him for interference with contractual relations on the basis that his actions were privileged, as they were within his

12

responsibilities as a Madison County supervisor and were not undertaken in bad faith. A plaintiff asserting a claim for interference with a contract must prove that the defendant's acts (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss. Hammons v. Fleetwood Homes of Miss., Inc., 907 So. 2d 357, 361 (Miss. Ct. App. 2004) (citing Par Indus., Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998)). The Mississippi Supreme Court, however, has limited this claim by holding that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999). In requesting Guyton's termination, Banks was clearly acting within the scope of his authority as a member of the Board of Supervisors. Therefore, his actions are privileged unless Guyton can prove that he acted in bad faith. Toward that end, plaintiff argues that there is sufficient circumstantial evidence to create a triable issue on plaintiff's charge that Banks sought to have plaintiff removed from his position as road manager so that Banks could get Morris appointed as road manager in order to prevent

13

Morris from running against him for his seat on the Board. However, it is apparent from a thorough consideration of the record evidence that plaintiff has no evidence, circumstantial or otherwise, to support what is nothing more than his belief, or speculation, that this is what occurred.[1] That being the case, it follows that summary judgment is in order on this claim

Defendants are also entitled to summary judgment as to plaintiff's final claim, for intentional infliction of emotional distress. As the basis for their motion on this claim, defendants note that "[t]he standard for intentional infliction of emotional distress ... is very high: the defendant's conduct must be 'wanton and wilful [such that] it would evoke outrage or revulsion." Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir. 2002) (quoting Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648, 659 (Miss. 1995)). The acts must be "' outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Speed v. Scott, 787 So. 2d 626, 630(Miss. 2001)). Defendants observe that in the employment context, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment

---

[1] The court notes defendants' position that the primary reasons Guyton was replaced by Morris were because (1) Guyton was not adequately performing, (2) Morris was the previous road manager who did adequately run the road department, and (3) constituents of Madison County had specifically requested Lawrence be rehired. Plaintiff has offered no evidence, only speculation, to the contrary.

14

disputes," and that successful claims in this context have "usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001). Plaintiff responds that his claim is not a "mere employment dispute" about losing his job, but rather is about Banks' getting him fired so that he could "bribe" Lawrence Morris with an offer of plaintiff's job to get Morris to not run against him so that Banks could thereby further his own political ambitions. Plaintiff reasons that if the jury were to accept his theory in this regard, then jurors "might well find [Banks'] violations of the criminal laws and/or ethical provision of the law to be 'extreme and outrageous.'" However, as the court has already concluded that plaintiff lacks sufficient evidence to create a genuine issue for trial on his theory regarding Banks' actions, the court need not even consider whether proof of these facts would suffice to make out an actionable claim for intentional infliction of emotional distress.

Based on all of the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 28th day of May, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE